**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Kevin J. Phillips,

Plaintiff,

v.

Department of Public Safety and
Aaron Churness, individually,

Defendants.

Civil No. 01-1585 (RHK/JMM)
**MEMORANDUM OPINION AND ORDER**

---

Michael J. Dougherty, Dougherty Law Offices, St. Paul, Minnesota, for Plaintiff.

Jerome L. Getz, Assistant Minnesota Attorney General, St. Paul, Minnesota, for Defendants.

---

## Introduction

On August 28, 1999, Plaintiff Kevin J. Phillips, an African-American, was stopped and the vehicle he was driving was searched by Aaron Churness, a Minnesota Highway Patrol Officer. Phillips has brought this suit alleging that the search violated 42 U.S.C. § 1983, the state constitution and the Minnesota Human Rights Act, and that the stop constituted false imprisonment. Defendants, the Department of Public Safety ("Department")[1] and Churness, have brought this Motion to Dismiss, challenging both

---

[1] The Department of Public Safety is a Minnesota state agency, charged with enforcing the law on federal and state highways in Minnesota. (Id. ¶ 2.) The Department employed Trooper Churness when the events underlying this lawsuit took place. (Id. ¶ 3.)



FILED FEB 06 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD FEB 06 2002
DEPUTY CLERK

this Court's subject matter jurisdiction and the merits of Phillips's claims. For the reasons set forth below, Defendants' Motion to Dismiss will be granted.

## Background

On August 28, 1999, Phillips was driving north on Interstate Highway 35 in Carlton County, Minnesota, in a rented car with Illinois license plates, when he was pulled over by Churness. (Id. ¶¶ 7-9.) For the purposes of this motion,[2] Defendants accept Phillips's allegation that he was stopped solely because of his race.

After stopping Phillips, Churness ran a check on Phillips's driver's license and rental agreement for the car he was driving; that check indicated that the license was valid and the rental agreement was in order. (Id. ¶ 10.) Churness then asked for permission to search the car, which Phillips expressly denied. (Id.) Churness told Phillips that he would detain the car until a dog search could be conducted, but that Phillips was free to leave.[3] (Id. ¶ 11.) Phillips chose to stay at the scene. (Id.) The search, conducted approximately an hour later, turned up a small amount of marijuana. (Id. ¶¶ 11, 13.)

In January 2000, Phillips pled guilty in Carlton County District Court to

---

[2] Although the Background section accepts Phillips's allegations, we note that Defendants, in a letter to the Minnesota Department of Human Rights, asserted that Churness stopped Phillips because a check of his license plate indicated that the plate was not on file and that Churness requested permission to search the car because Phillips's eyes were pink. (Aff. of Kevin Phillips ¶ 2, Exh. 3, Ref. E.)

[3] While Defendants contend that Phillips could have simply walked down the road, this is not a realistic option. Not only is walking down the side of a highway a dangerous proposition, it would appear to violate Minnesota law. See Minn. R. 8810.0050 Order 30757 ("the use of [interstate highways] by pedestrians . . . is hereby prohibited.").

possessing a small amount of marijuana, in the form of a cigarette, in a motor vehicle. (Petition to Enter Plea.) In the Petition to Enter Plea, signed by Phillips and his attorney, Phillips's attorney stated that to the "best of his knowledge [Phillips's] constitutional rights have not been violated and no meritorious defense exists to the charge(s) to which [Phillips] is pleading guilty." (Id.) Phillips himself represented that he had "fully discussed the charge[ ], his constitutional rights, and [the] petition with his attorney." (Id.) The state trial court was not a party to the plea agreement. Based on the foregoing, the state court accepted the plea of guilty and fined Phillips $200, stayed $100 of that fine for six months, and imposed a $25 court surcharge and a $5 library fee. (Petition to Enter Plea; Sentencing Inquiry.)

Prior to bringing this suit, Phillips filed a charge with the Minnesota Department of Human Rights alleging that he was stopped and searched because of his race. (Aff. of Kevin Phillips ¶ 2, Exh. 1.) The Department of Human Rights dismissed the charge, finding no probable cause to believe Phillips's allegation of an unfair discriminatory practice by the Department of Public Safety. (Id. ¶ 2, Exh. 2.) Phillips appealed that determination. (Id. ¶ 2, Exh. 4.) It appears that the appeal was unsuccessful, although the record before the Court is silent on that issue.

Phillips's Complaint alleges four causes of action. First, pursuant to 42 U.S.C. § 1983, Phillips claims that Churness violated his Fourth, Fifth, and Fourteenth Amendment rights by searching his car without a warrant or probable cause and by detaining him

against his will. Second, he claims that Churness's conduct violated his due process rights and the guarantee against unreasonable searches and seizures enumerated in Article 1, Sections 7 and 10, of the Minnesota Constitution. Third, he claims that Churness discriminated against him on account of his race in violation of the Minnesota Human Rights Act, Minn. Stat. § 363.03. Finally, he claims that he was falsely imprisoned.

## Analysis

### I. Subject Matter Jurisdiction and Rooker-Feldman

Defendants challenge this Court's subject matter jurisdiction by arguing that, because Phillips pled guilty in state court and did not challenge the constitutionality of the search of his car, the Rooker-Feldman[4] doctrine precludes this Court from considering the merits of Phillips's state and federal constitutional claims. Under the Rooker-Feldman doctrine, this Court is deprived of subject matter jurisdiction if success on Phillips's claims in this Court would necessarily imply that the state court was wrong in accepting his guilty plea. While Defendants have not formally couched this argument under Fed. R. Civ. P. 12(b)(1), when the subject matter jurisdiction of the Court is in question it is properly resolved under 12(b)(1).

#### A. Scope of the Record Before the Court

A motion seeking dismissal for lack of subject matter jurisdiction may challenge

[4] District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

the plaintiff's complaint either on its face or on the factual truthfulness of its averments. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. U.S., 918 F.2d 724, 729 n.6 (8th Cir. 1990). Here, the Complaint, on its face, sufficiently avers subject matter jurisdiction and, accordingly, the Court determines that the Defendants are making a factual challenge to Phillips's Complaint.

In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6). Titus, 4 F.3d at 593; Osborn, 918 F.2d at 729 n.6. "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." Osborn, 918 F.2d at 730.

**B. Rooker-Feldman**

"The Rooker-Feldman doctrine recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000), cert. denied sub nom. Halbman v. St. Louis County, 121 S. Ct. 1168 (2001). Federal review of state court judgments is vested exclusively in the United States Supreme Court. 28 U.S.C. § 1257; District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983).

Lower federal courts engage in impermissible appellate review whenever they entertain claims that are "inextricably intertwined" with those addressed in the state court. Snider v. City of Excelsior Springs, 154 F.3d 809, 811 (8th Cir. 1998). A claim is "inextricably intertwined" if the relief requested in the federal action requires determining that the state court decision is wrong or would have the effect of voiding the state court's ruling. Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995); Keene Corp. v. Cass, 908 F.2d 293, 296 (8th Cir. 1990) (quoting Penzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). The issues need not be identical. Lemonds, 222 F.3d at 493; In re Goetzman, 91 F.3d 1173, 1177 (8th Cir. 1996).

In this case, Phillips had a "reasonable opportunity to raise his federal claims in [the] state proceeding[ ]." Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 198 (4th Cir. 2000). Phillips did more than just fail to raise his constitutional rights in state court – he affirmatively represented to the state court that his rights had not been violated, which in effect took the issue away from the state court. By failing to raise his constitutional rights in state court, Phillips forfeited his right to obtain review of the state court decision in any federal court. Feldman, 460 U.S. at 482 n.16.[5]

Phillips now contends that he did not intend to waive his constitutional rights in

---

[5] "By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court. This result is eminently defensible on policy grounds. We have noted the competence of state courts to adjudicate federal constitutional issues." Feldman, 460 U.S. at 482 n.16.

state court, but merely pled guilty for the sake of convenience. This argument ignores his attorney's representation to the state court that his constitutional rights had not been violated as well as the Supreme Court's holding in Feldman. Id.

In accepting Phillips's guilty plea, the state court accepted at face value Phillips's representation that there were no meritorious defenses to the charge and that his constitutional rights had not been violated. If Phillips succeeds on his § 1983 claim, however, it would necessarily imply not only that his constitutional rights violated but also that he could not have been convicted in state court, as the only evidence available to the state authorities would have been excluded. As a result, Phillips's § 1983 claim is "inextricably intertwined" with the issues addressed in state court and therefore, under the Rooker-Feldman doctrine, this Court lacks subject matter jurisdiction.[6]

---

[6] Even if the Court did have subject matter jurisdiction, Phillips's § 1983 claim is properly dismissed under Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that a § 1983 claim is not cognizable where a judgment in favor of the plaintiff would necessarily imply the invalidity of his state conviction, unless the conviction or sentence has already been invalidated. Thus, in order to state a § 1983 claim, Phillips must either: (1) "prove that [his] conviction . . . has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," or (2) demonstrate that his action "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against" him. Id.

In the present case, Phillips's conviction has not been reversed, expunged, or called into question by a federal court. Phillips, therefore, contends that if his § 1983 action is successful, it would not necessarily imply that his state conviction was invalid. As explained above, however, if he were to succeed on this claim it would necessarily imply that the state authorities would not have been able to convict him because the only evidence against him, the small amount of marijuana, would have to be excluded.

## II. Phillips's State Law Claims

Phillips contends that his remaining state law claims are before the Court pursuant to its supplemental jurisdiction. 28 U.S.C. § 1367 provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Id. (emphasis added). Because this Court lacks original jurisdiction under the Rooker-Feldman doctrine, it does not obtain supplemental jurisdiction over Phillips's state law claims.[7] 28 U.S.C. § 1367.

**Conclusion**

Upon all the files, records, and proceedings herein, and for the reasons stated above, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. No. 5) is **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 6, 2002

Richard H. Kyle
United States District Judge

[7] Even if the Court had original jurisdiction, the Court would decline to exercise supplemental jurisdiction over the remaining state law claims, since Phillips's claim is barred by Heck.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995